```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA      )
                              )        No. 03-10370-6-DPW
     v.                       )
                              )
JOHN GRAHAM,                  )
                              )
          Defendant.          )
```

GOVERNMENT'S OPPOSITION TO JOHN GRAHAM'S MOTION TO SEVER

The United States of America, by and through its attorneys Michael J. Sullivan, United States Attorney for the District of Massachusetts, and Assistant U.S. Attorney Rachel E. Hershfang, hereby opposes John Graham's ("Graham") motion for severance.

The severance Graham seeks is not supported by the evidence or the law. As described more fully below, Graham is charged, along with seven other defendants, with participating in a conspiracy to possess with intent to distribute marijuana. The witnesses and proof with respect to all Count One defendants are intermingled, and severing Graham's case from those of the other seven defenants would result in unnecessary duplication of trial time, witnesses, and effort.

For the reasons set forth below, the government opposes the motion for severance currently before the Court.

## FACTS

The moving defendant is one of eight indicted in a six-count Indictment returned on December 2, 2003. The Indictment resulted from an investigation by the Drug Enforcement Administration

("DEA") into a Boston- and Brookline-based marijuana trafficking organization.  The investigation culminated in a wiretap, in place from late July, 2003 until early December, 2003, on various telephones used by the targets of the investigation.  The resulting Indictment alleges a conspiracy among the eight defendants, including Graham (Count One), in addition to charging one individual (not Graham) with possession with intent to distribute and distribution of marijuana (Counts Two, Three, Four and Five) and money laundering (Count Six).

 As the complaint affidavit makes clear, Count One charges a group of distributors, buyers, and sellers who worked together to distribute marijuana throughout the greater Boston area.  The group was comprised of two bulk marijuana distributors (Douglas Bannerman and Kurt Walter), as well as a number of retail-level distributors, of whom Graham was one.  As described in the complaint affidavit, Graham was intercepted during the period of electronic surveillance on one of the Target Telephones (July 2003 through December 2003).  The recorded calls reflect Graham's calls to and from Kurt Walter ("Walter").  These calls show Graham's attempts to buy marijuana from Walter for distribution.

 As described in greater detail in the complaint affidavit, intercepted conversations and DEA surveillance show Graham organizing meetings with Walter, then receiving packages from Walter.  Graham continued to seek marijuana from Walter throughout the course of the surveillance, often having several

phone calls and discussions in a single day.  In coded language, the calls include Walter asking Graham about the quality of marijuana that Graham had received from Walter, and whether Graham had any of it left.  Graham indicated that while he still had some marijuana, he was interested in getting more.

When Walter informed Graham he was "out" (of marijuana), Graham replied that it was "bad news" as he was "the only one that has marble on his countertops, you know what I mean... Nobody else has marble... I'm like a mark" and, at a different time that Graham needed "marble today."  At another point, when Walter had no marijuana to provide to Graham, Graham noted that a short delay was not a problem because his customer was gone for a period of time, but "that will be his first question [when he returns]."

The wiretapped calls also include discussions between Graham and Walter about Graham's inability to get marijuana from alternate sources as well as how "rates on the project were on the increase" (believed to be references to increases in the price of marijuana).

### ARGUMENT:

### The Defendants Named in the Indictment are Properly Joined Under Fed. R. Crim. P. 14 and Should be Tried Together.

   A.   The Law Favors Joint Trials for Coconspirators.

Coconspirators should be tried together.  See Zafiro v. United States, 506 U.S. 534, 537 (1993).  Under Fed. R. Crim. P.

14, "the court may grant a severance of defendants" if the joinder, proper under Rule 8(a), nonetheless prejudices a defendant.  However, for reasons of judicial economy, consistency, and coherence, coconspirators should ordinarily be tried together, and the federal system prefers joint trials of defendants who are indicted together.  Joint trials "play a vital role in the criminal justice system."  <u>Zafiro</u>, 506 U.S. 534, 537 (1993), <u>quoting</u> <u>Richardson v. Marsh</u>, 481 U.S. 200, 209 (1987).

In the First Circuit, the general rule is that "those who are indicted together should be tried together."  <u>United States v. DeLeon</u>, 187 F.3d 60, 63 (1st Cir. 1999) (citation omitted).  Severance therefore should be granted only if a defendant can "demonstrate prejudice so pervasive that it would be likely to effect a miscarriage of justice" to try him with his codefendants.  <u>DeLeon</u>, 187 F.3d at 63 (citations omitted); <u>see also</u> <u>United States v. LiCausi</u>, 167 F.3d 36, 49 (1st Cir. 1999).  To satisfy this standard, a defendant must do more than establish that he might have a better chance of acquittal in a separate trial.  <u>Id.</u> (citation omitted).  The First Circuit warns defendants seeking severance that this is "a difficult battle for a defendant to win."  <u>Id.</u> (citation omitted).  As the First Circuit has stated:

> When several defendants are named in a unified indictment, there is a strong presumption that they should be tried together. [citations omitted].  To obtain a severance under such circumstances, a

>            defendant must demonstrate extreme prejudice,
>            such as by showing a 'serious risk that a
>            joint trial would compromise a specific trial
>            right,' or would 'prevent the jury from
>            making a reliable judgment about guilt or
>            innocence.'

United States v. Houlihan, 92 F.3d 1271, 1295 (1st Cir. 1996), quoting Zafiro, 506 U.S. at 538-39; United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993).  In short, it is not common, and should not be easy, for a defendant, particularly a defendant in a conspiracy case, to win severance.  E.g., United States v. Brandon, 17 F.3d 409, 440 (1st Cir. 1994) ("In the context of conspiracy, severance will rarely, if ever, be required.") (citation omitted).

   Graham claims that the risk of potential negative "spillover" effect would not only compromise his trial rights, but would prevent the jury from making a reliable judgment about his guilt or innocence.  Therefore, he argues, he should be tried alone.  This argument is not persuasive.  Some measure of prejudice always inheres to a defendant who is tried jointly with codefendants.  See  United States v. DeLuca, 137 F.3d 24, 36 (1st Cir. 1998)("a measure of evidentiary spillover is a foreseeable concomitant of virtually every joint trial, yet seldom indicates undue prejudice") (citation omitted).  But such "garden variety prejudice" alone will not suffice to support a motion to sever. United States v. Boylan, 898 F.2d 230, 246 (1st Cir. 1990) (citations omitted).

Graham alleges in his motion for severance that he was a minor player in a marijuana conspiracy, involving "many defendants, who have different degrees of culpability" in this "complex, single case" and argues that, as a lesser player in the conspiracy, he will be unduly prejudiced by the jury's hearing evidence of criminal activity in which he was not directly involved.  Even if everything Graham says is true, it does not advance his cause.  Disparity in evidence admissible against different codefendants, alone, is not a sufficient basis for severance.  See, e.g., United States v. Levy-Cordero, 67 F.3d 1002, 1007 (1st Cir. 1995)(denial of severance appropriate because no evidence of "spillover" merely because "minnow" stands trial with "kingfish").  Any possible prejudice can be avoided by instructions specifying that jurors are to consider separately the charges against each defendant.  E.g., DeLeon, 187 F.3d at 64 (noting, in affirming denial of severance, that limiting instructions had jury consider charges and evidence against defendants individually).

Graham argues that his potential defenses may be antagonistic to those presented by other codefendants, positing a theoretical defense in which he would admit purchase of personal-use quantities of marijuana, thus inculpating a codefendant (Walter).  Mutually antagonistic defenses are not prejudicial *per se*, though the theoretical defense would likely be so (not, of

-6-

course, to Graham, the movant).  Moreover, Rule 14 does not require severance even if prejudice is shown.  <u>Zafiro</u>, 506 U.S. 534, 538 (1993).  In the First Circuit, "it is well settled that 'antagonistic defenses do not per se require severance, even if the defendants are hostile or attempt to cast blame on each other.' Severance is required only where the conflict is so prejudicial and defenses are so irreconcilable that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." <u>United States v. Talavera</u>, 668 F.2d 625, 630 (1st Cir. 1982), <u>quoting</u> <u>United States v. Davis</u>, 623 F.2d 188, 194 (1st Cir. 1980).  In Graham's hypothetical case, the jury would presumably (justifiably) infer that Walter must be guilty, while Graham will appear (relatively) blameless.  Simply put, this is not the sort of prejudice that requires severance.

   Graham was properly joined in the indictment with the other defendants and should remain joined for trial.  Based on the wiretap, as well as the surveillance, the government's evidence is that Graham repeatedly attempted to obtain marijuana from Walter, with the intent of distributing it.  As described above, Graham was in regular contact with Walter throughout the surveillance and repeatedly attempted to obtain marijuana from Walter.  The evidence of Graham's criminal activity is intertwined with the evidence of Walter's criminal activity, and parallels evidence of other, similarly-situated defendants'

criminal activity (important proof as against Walter).  Each defendant's role can be assessed by the jury.  The defendant has not made a showing of prejudice sufficient to overcome the strong preference for joint trial of codefendants.

    **B.**    **Judicial Economy Mandates a Joint Trial Because of Significant Overlap in Evidence Against Each Defendant.**

Judicial economy strongly weighs against severance.  The six-count indictment in this case alleges a conspiracy involving eight defendants.  As outlined above, and as more fully described in the affidavit, there is significant overlap in the evidence against the various members of the conspiracy.  Separate trials would result in the unnecessary duplication of witnesses and exhibits and cause the government to put on a substantial part of its case twice, or more, thus defeating the clear benefits of a joint trial.  See United States v. Magana, 127 F.3d 1, 7 (1st Cir. 1997) ("There are obvious advantages in judicial economy to the joint trial of defendants accused of the joint commission of crimes.") (citations omitted).  Graham's unsubstantiated claims of prejudicial spillover do not warrant the expense and inconvenience that would result from trying the same case multiple times.

    **C.**    **Any Prejudice Could Be Cured by Instruction**

Finally, although there would be no harm in trying the defendant jointly with his codefendants, any <u>potential</u> prejudice

-8-

arising from a joint trial could be cured by a limiting instruction to the jury that there must be sufficient proof against each individual defendant, and that such proof must be considered independently. Indeed, such an instruction is fairly mandated in a multi-defendant trial such as this one. It is well settled that juries are presumed to follow the court's instructions. See e.g., United States v. Olano, 507 U.S. 725, 741 (1993); United States v. Rullan-Rivera, 60 F.3d 16, 19-20 (1st Cir. 1995); cf. United States v. Guyon, 27 F.3d 723, 729 (1st Cir. 1994)(limiting instructions "cushion[] the impact and reduce[] any possible prejudice"). Thus, appropriate limiting instructions explaining that each defendant must be considered separately will eliminate any perceived prejudice.

## CONCLUSION

Based on the facts and argument set forth above and filed herewith, as well as any presented at a hearing on this matter, the government submits that Graham's motion to sever should be denied.

    Respectfully submitted,

    MICHAEL J. SULLIVAN
    United States Attorney

By:
    /s/ Rachel E. Hershfang
    RACHEL E. HERSHFANG
    Assistant U.S. Attorney

Dated: October 20, 2004