UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

CRIMINAL No. 03CR10370-DPW

UNITED STATES

v.

JOHN S. GRAHAM

**DEFENDANT JOHN S. GRAHAM'S COMBINED MOTION
FOR HOME CONFINEMENT AS METHOD OF INCARCERATION
AND SENTENCING MEMORANDUM**

I.      **STATEMENT OF THE CASE**

The Defendant, John S. Graham, agrees with the statement of the case as outlined in

the Presentence Report ("PSR"), Part A, entitled "The Offense," with the following

exceptions:  As documented, at the time of the testing in question, Mr. Graham had within

his system Prednisone, Methotrexate, Plaquenil, and Wellbutrin.  He admits that he had

THC in his system prior to his arrest, and that it apparently remained present thereafter.  Mr.

Graham does not contest the subsequent findings that THC was present systemically, and

agrees that prior to arrest he was a heavy user of marijuana.  With respect to Mr. Graham's

change of address in July/August, 2004, Mr. Graham, though counsel, specifically notified

Pretrial Services, both telephonically and by correspondence dated July 30, 2004, as to his

change of address.  The court specifically approved the motion that was subsequently presented regarding the change of address.

On September 7, 2005, a one count information was filed in the U.S. District Court, which charged Mr. Graham with simple Possession of Marijuana.

With respect to the Offense Conduct, Section I, Case Overview, ¶ 2-4, Mr. Graham does not dispute the allegations contained therein.  The allegations in this section, however, do not relate to Mr. Graham as he was not part of any conspiracy.

The Defendant, John S. Graham, does not dispute the statements set forth in Section II, captioned "The Wiretaps,"  ¶ 5-9,

The Defendant, John S. Graham, agrees with the statements set forth in Section III, captioned "Cooperator Information," ¶10-22.  Although most of this section deals with other individuals, the Defendant, John S. Graham, does not challenge the statements contained in ¶ 19, that Walter gave about Mr. Graham, including, inter alia, the following: "Walter identified Graham as someone with a serious substance abuse problem.  Walter ordinarily sold Graham quantities of marijuana that were less than a pound, but could not be certain that he had never sold Graham quantities of more than a pound.  In response to questions at a later date, Walter indicated that he did remember selling Graham half a pound of marijuana on one occasion, and thought that he might have sold Graham a pound on another occasion, though he could not be sure."

The Defendant, John S. Graham, agrees with the statements set forth in Section B, captioned "Information from Unindicted Co-conspirators,"¶ 23-61. Specifically, Mr. Graham does not dispute Section B(1), concerning "CW-1," ¶ 23-37; Section B(2) concerning CW-2, ¶38-43; Section B(3), concerning CW-6 (Gary Milo), ¶44-48; Section

2

B(4), concerning Edward Parker, ¶49-50; Section B(5), concerning Karen Woo, ¶51-55; as well as Section B(6), concerning Kenneth (Kam Po) Leung, ¶ 56-61. The statements in this section, (B)(1) – (6), however, do not relate to Mr. Graham as he was not part of any conspiracy. The Defendant, John S. Graham, admits that he was a user of marijuana supplied by Walter for his personal consumption, and that he was unaware of the facts surrounding the conspiracy as outlined in this section.

Section IV, captioned "Information on Individual Defendants' Weight Calculations," include statements unrelated to Mr. Graham's plea. Paragraphs 62-117, and Paragraphs 125-131 do not relate to Mr. Graham, and therefore, the Defendant does not object to such statements, although they involve matters of which he does not have personal knowledge. As to Mr. Graham, the Defendant agrees with the statements set forth in Section IV (F)(1), captioned "Charged Conduct," ¶ 118-120. The Defendant agrees with the statement that "John S. Graham was a customer of Walter's who, according to Walter, was a heavy marijuana user." The Defendant agrees that at the time of his arrest, he informed DEA agents that he was only a user. With respect to Paragraph 118, the Defendant agrees with the statement that surveillance showed (and Walter confirmed) that his meetings with Walter were far less frequent than their calls would imply. The Defendant agrees that he did often call Walter looking for handouts. However, many other conversations, which the government contends were code, actually involved matters of interior design and supplies for Walter's restaurant venture. The Defendant also agrees with the statements contained in Paragraphs 119-120. The Defendant states that the box he was photographed carrying included Asian artifacts and design books.

With respect to Section IV (F)(2), captioned "Relevant uncharged conduct," ¶ 124-120, the Defendant, John S. Graham, states that certain conversations were intercepted, as stated, but that he disagrees with the conclusions arrived at by the government. In particular, with respect to Paragraph 123 of PSR, Mr. Graham denies that he was selling, or attempting or planning to engage in the process of selling, marijuana. Mr. Graham was not engaged in any activities for personal gain, but that he was a heavy personal user. Although there was evidence that Mr. Graham may have attempted to introduce another individual to Walter, Mr. Graham denies that he was seeking to personally sell or profit from any such introduction. The Defendant does not, however, challenge the allegations that he repeatedly attempted to acquire marijuana from Walter or that he suggested the possibility that a third party might also want to purchase marijuana from Walter.

With respect to Section IV (F)(3), captioned "Applicable drug weight," ¶ 124, the Defendant, John S. Graham agrees with the statement that "Graham has agreed that for the purposes of determining a sentence, the relevant drug weight is 2.5 to 5 kilograms of marijuana." There is no evidence, however, that Graham was ever seen carrying multiple "boxes." The only disclosed evidence is that Mr. Graham was seen carrying a single box out of Walter's home on the isolated date of July 30, 2003 (the date referenced in the superceding information, w which Mr. Graham has offered a guilty plea). This box included an Asian artifact (specifically, a statue) and design books. With respect to the weight, the Defendant also objects to the suggestion that "five" or "five turns to thirty" is any reference to "five pounds of marijuana." The language utilized incorrectly suggests that "five turns to thirty" naturally suggest pounds. Mr. Graham vehemently disagrees with such characterization. In point of fact, it is Mr. Graham's position that "five turns to thirty" is a

reference to price per square foot of flooring, with "five" being the lesser quality and "thirty" being the better quality. According to the government's disclosure, Walter indicated during proffers that he found such statements by Graham, i.e., "five turns to thirty," to be incomprehensible. PSR, ¶119.

The Defendant, John S. Graham, agrees with Paragraph 132 of the PSR that this is no identifiable victim set forth in this case. The Defendant further agrees with the assessment that there is no evidence that the Defendant has obstructed justice, as set forth in Paragraph 133 of the PSR. The Defendant agrees that he should be granted credit for his Acceptance of Responsibility. This is a case in which the Defendant, as of the date of his arrest, admitted to the DEA agents that he was a user of marijuana. He therefore agrees with the Probation recommendation that his offense level should be reduced by two levels per U.S.S.G. §3E1.1 (a).

The Defendant, John S. Graham, agrees with Offense Level Computation set forth in paragraphs 135-146. The Defendant agrees with that the Base Offense Level, pursuant to U.S.S.G. §2D2.1(a)(3), amounts to Level 4, as the substance involved was marijuana. The Total Offense Level determined by Probation is Level 8. The Defendant does not object to such level, however, for purposes of his plea, reference is respectfully made to Section 2 (A) of the plea agreement, dated September 6, 2005..

The Defendant, John S. Graham, agrees with the calculation that his Criminal History Category 1. ¶ 153.

There is a statement (PSR, ¶ 174) in which Mr. Graham reports that Ms. Dolley is in "good health." This statement is generally correct. It should be noted, however, that Ms. Dolley has insulin dependant Diabetes and has had several serious episodes related to such

condition, including in instance that required emergency medical intervention.  Specifically, Mr. Graham found his fiancée unconscious in his daughter's room and called for an ambulance, which potentially saved her life.

Paragraph 189 is not entirely accurate in its description of Preservation International, Inc.  Specifically, the following sentence is inaccurate:  "This company sells high end carpets to historic buildings as well as other buildings."  In actuality, the company is licensed to produced "high end" reproductions of carpets for sale primarily to interior designers and residential clients.  The carpets are reproductions of historic carpets found in historic homes such as the Newport Mansions.

## II.    THE DEFENDANT'S REQUEST FOR INCARCERATION BY HOME CONFINEMENT

On September 8, 2005, John S. Graham, pleaded guilty to a Superseding Information, which charged him with a violation of 21 U.S.C. § 844 – possession of marijuana, a Schedule I controlled substance.  The charged conduct was alleged to have occurred on July 30, 2003.  Pursuant to Section 2 (A) of Mr. Graham's plea agreement, the parties have agreed that the Defendant is responsible for 2.5 kg to 5 kg of marijuana.  The evidence supporting such amount is the fact that Mr. Graham was observed carrying a single box from Walter's house on July 30, 2005.  No marijuana was ever seized from Mr. Graham, nor was any amount of marijuana ever observed in his possession.

Mr. Graham is a Canadian citizen.  Subsequent to his arrest, Mr. Graham, who was born in Canada, but who has resided in the United States since he was approximately seven (7) years old, came to appreciate for the first time that he is not a citizen of the United States.  Mr. Graham was under the mistaken belief that he held dual nationalities, as had

been described to him by his father years earlier.  Mr. Graham's parents and only sibling did, in fact, naturalize as U.S. Citizens, but Mr. Graham was left as the only member of his family not to pursue such status.  The Defendant was originally indicted as being a member of a distribution conspiracy.  Although Mr. Graham vehemently denies that he was a member of any conspiracy, faced with likelihood of certain deportation if convicted of such an offense, he was strongly motivated to agree to plead guilty to possession of marijuana in the amount to which he admitted.

As set forth in ¶ 19 of the PSR, Walter, who became a cooperating witness, identified Graham, not as a dealer, but as an individual with a serious substance abuse problem:  "Walter identified Graham as someone with a serious substance abuse problem. Walter ordinarily sold Graham quantities of marijuana that were less than a pound, but could not be certain that he had never sold Graham quantities of more than a pound.  In response to questions at a later date, Walter indicated that he did remember selling Graham half a pound of marijuana on one occasion, and thought that he might have sold Graham a pound on another occasion, though he could not be sure."  PSR, ¶ 19.

As Probation has described, "John Graham was a customer of Walter's who, according to Walter, was a heavy marijuana user.  At the time of Graham's arrest, he also told DEA agents that he was user.  Calls intercepted on the wiretaps reflected Graham's persistent efforts to engage Walter in marijuana dealings; however, surveillance showed (and Walter confirmed) that the meetings were far less frequent than Graham's calls would imply."  PSR, ¶ 118.  Indeed, although there were a variety of telephone calls between Graham and Walter, much of the evidence can clearly be interpreted as Graham's efforts to assist Walter in interior design work related to a restaurant renovation project in exchange

for occasional handouts of marijuana.  Furthermore, the wiretaps establish that during

period's that Walter was telling Graham that he did not have any marijuana for the

Defendant's personal use, Walter was distributing drugs to individuals other than the

Defendant.  Not only does such fact contradict Mr. Graham's involvement in any

distribution conspiracy, but it also supports the position that Mr. Graham was only looking

for handouts.

A.      **Post Offense Rehabilitation, Acceptance of Responsibility, and Remorse**

Mr. Graham has accepted responsibility, is truly remorseful of his conduct, and has

already begun his rehabilitation.  As early as the date of his arrest, Mr. Graham admitted to

being a user of marijuana.  He specifically informed DEA agents that he was a marijuana

user.  Mr. Graham has also not only embarrassed himself and his family by his conduct, but

also placed his family in the untenable position by potentially having his permanent

residency status jeopardized.  Mr. Graham is particularly concerned about separation from

his three (3) year old daughter.  Faced with the realization that his entire world as he knows

it might come to an end, Mr. Graham has reassessed his values and beliefs.  He has learned

a serious, life-altering lesson, and already experienced substantial rehabilitation.  He has

been shamed by his conducted and re-devoted his life to his family.

This Court should weigh Mr. Graham acceptance of responsibility and genuine

remorse.  Where in the past he might have considered his drug problem to be his alone, he

has come to understand that it effected his entire family, most particularly his three (3) year

old child, her mother, and his own mother; and from a larger picture, his community as a

whole.  He has distanced himself from his former circle of friends and devoted himself to

his family. Since his arrest and indictment, Mr. Graham has come to realize substantial toll

his history of drug use has taken on his family. Mr. Graham has admitted his past shortcomings and irresponsibility.

Both prior to and subsequent to his arrest, Mr. Graham has been actively involved with his community and charitable endeavors. For example, long before the conducted referenced in the superceding information, following the events of September 11, 2001, Mr. Graham traveled to ground zero with the Detective Endowment Association of NY and the NYPD Police Benevolent Association, and helped organize a fundraising event called "Heroes in Uniform," in order to raise money for the families of victims. Mr. Graham has been involved with the Multiple Sclerosis Society for approximately four (4) years; the Massachusetts Society for the Prevention of Cruelty to Children for approximately three (3) years; the Ally Zapp Founding for approximately five (5) years; the Drew Bledsoe Foundation for Better Parenting for approximately three (3) years; the Cam Neely Foundation for Cancer Research for approximately two (2) years; the Save the Bay Foundation for approximately three (3) years; the Newport Boys and Girls Club for approximately two (2) years, as well as other charities. Since his arrest, Mr. Graham redoubled his charitable efforts. For example, Mr. Graham has become a committee member for the Link Up for MS Golf Tournament and Women Against MS Gala. From his fledgling company he has made a variety of donations of his carpet products, including donations to the MS foundation and the Flip Flop Regatta.

Since his arrest and indictment, Mr. Graham has come to realize substantial toll his history of drug use has taken on his family. Mr. Graham, who, the evidence would suggest, prior to his arrest consumed copious amounts of marijuana on a regular basis, has been able to abstain from his drug habit. Since testing positive for THC following his arrest, Mr.

Graham has not consumed any marijuana despite his prior reliance on the drug.  He, instead, has directed his energies towards his family, his career, and his community.

**B.      Under the Totality of the Circumstances a Six Month Home Detention is Appropriate.**

This Honorable Court, under the totality of the circumstances, should order Mr. Graham to serve not more than six months of home confinement as the method of his incarceration.   Pursuant to *Koon v. United States*, 518 U.S. 81 (1996), the Supreme Court explained that district courts have broad discretion in matters related to the guidelines.  The court should look to the totality of the circumstances involved.

In the case at hand, Mr. Graham is the father of a three (3) year old daughter, Shelby Graham, born 11/26/2002.  Mr. Graham lives with and is involved in a committed relationship with his fiancée, the child's mother.  Together they raise their daughter as a family and a team.  While Ms. Dolley works in the real estate industry, which frequently requires her to work weekends, Mr. Graham assumes primary parental responsibilities during such time.  Additionally, Mr. Graham cares for his daughter during the week, during times when he is not working.

 In addition to the time and attention that Mr. Graham devotes towards his child, he also has been a means of support for his fiancée, both physically and emotionally.  As noted above, Ms. Dolley suffers from insulin dependant Diabetes.  She has had several serious episodes related to such condition, including in instance that required emergency medical intervention.  On one occasion, Mr. Graham found his fiancée unconscious in his daughter's room and called for an ambulance.  While Ms. Dolley's diabetes is manageable, and the frequency with which she experiences serious events is only periodic, Mr. Graham's

presence in the home has been an additional safety net for his fiancée.  Likewise, Mr.

Graham provides assistance, emotionally and physically, to his seventy-three (73) year old

mother.  Mrs. Graham, who was stricken with polio as a child, has undergone knee

replacement surgery, and is now in her seventies often requires assistance with household

chores and activities such as shopping.  The Defendant often provides assistance in such

regards.

Since his arrest, Mr. Graham has formed a business to market and sell high end

custom carpets. The business is named Preservation International, Inc., which is an S

Corporation organized and existing under Massachusetts law.  Mr. Graham is the sole

employee and manager of the company.  Although not yet to report a gain, Mr. Graham has

begun to lay the foundation for a career whereby in the future he hopes to be able to support

his family.  Mr. Graham's absence from participation in the work of Preservation

International, Inc. for a protracted period of time would effectively mean an end to business.

Importantly, this is a case in which the Defendant, John S. Graham, is not a U.S.

citizen, despite the fact that he has lived in this country since his early youth and the rest of

his family has naturalized.  Mr. Graham is presently raising his three-year-old daughter here

in Massachusetts, where his life has been centered for decades.  Within the range agreed

upon in the plea agreement, this Court could impose the least restrictive sentence of six-

month home confinement. The parties have entered into a plea agreement wherein the

Defendant has agreed that the appropriate drug weight is between 2.5 kg and 5 kg despite

the fact that no drugs were seized from Mr. Graham nor were any observed in his

possession.  The basis of the government's determination of a drug weight is premised upon

the fact that Mr. Graham was observed carrying a single box from Walter's house on July

30, 2003. According to the government's own cooperating witness, Walter, however, there is little support for a finding that Graham possessed the amount to which he has plead. *See* PSR, ¶ 19. The reality is that, rather than run the gauntlet of a trial, with certain deportation if convicted, Mr. Graham has made a conscientious decision to plead to the possession charge, with the amounts demanded by the government. Such decision avoided the potential risk of a felony conviction, which would almost certainly trigger his removal from this county and his loved ones, and allowed him to have a fighting chance should any deportation action be initiated.

WHEREFORE, the Defendant respectfully requests that this Honorable Court approve his request.

Respectfully submitted,
JOHN S. GRAHAM
By his attorney,

*/s/ Adam A. Rowe*

_____
William D. Crowe – BBO No. 106960
Adam A. Rowe – BBO No. 634885
CROWE & DUNN
141 Tremont Street, 8th Floor
Boston, Massachusetts 02111
(617) 367-6767

Dated: November 14, 2005